In the Matter of the Estate of FRANK ROESSLER, Deceased.

Surrogate's Court, Kings County, May 28, 1939.

*Vincent Mastrogiacomo* [*A. Albert Luongo* of counsel], for Howard E. Roessler, as executor, etc.

*Abraham J. Rosenblum,* for Richard G. Roessler and Walter P. Roessler, objectants.

WINGATE, S.  The opposition of the respondents to the confirmation of the report of the learned referee, Oscar A. Lewis, Esq.,

exhibits a misconception respecting practice in Surrogates' Courts which requires a word of comment for purposes of preliminary clarification. Each of the four objections interposed is " to the referee's finding and conclusion " in respect of a stated point.

Unlike the practice in courts of general jurisdiction, the reports of referees in the Surrogates' Courts have never been required to contain either findings of fact or conclusions of law. (*Matter of Carpenter*, 178 App. Div. 165, 167; *Matter of O'Connor*, 159 Misc. 522, 524.) This established practice has been crystallized in the current amendment to section 66 of the Surrogate's Court Act (Laws of 1939, chap. 343, effective April 24, 1939) which expressly states that the report of a referee appointed by the surrogate " need not contain either the facts found or the conclusions of law."

It follows, as pointed out in the *O'Connor* case (*Matter of O'Connor*, 159 Misc. 522, 523), that the report of a surrogate's referee is required only to be in such form as is " satisfactory to the court itself." This court has continuously deprecated the inclusion of findings and conclusions, and the present report conforms to its preference in this respect. No findings or conclusions are incorporated therein except the statement of ultimate result which reads: " I conclude that the claimants have failed to establish the validity of their claim."

The attack of the respondents is, therefore, directed at the composite result and not at any assumed intermediate step in its attainment.

The claim, the validity of which is here in issue, is a joint one presented by two sons of the deceased and seeks to recover from the estate the sum of $10,990, with interest thereon from August 31, 1914. The alleged facts upon which it is predicated are that the decedent abandoned his wife, the mother of the claimants, in August, 1914, and from that date failed to contribute to her support or to that of another, infant, son of the marriage, and that the claimants contributed to their support. The amount sought to be recovered is a computation of " the fair and reasonable cost of the support."

It was demonstrated on the hearing that in 1914 the decedent moved from Brooklyn to Mattituck, Long Island, where he opened a tailoring establishment and resided up to a short time before his death. It was also proved that his wife did not accompany him, and that thereafter the claimants, who resided with the wife in the former Brooklyn residence, made contributions to the upkeep of the household both while they continued to live with her and even, to some extent, after they married and left to set up separate establishments of their own.

The circumstances surrounding the departure of the decedent were not shown, and this raises the first point of complaint by the respondents with the result of the referee, in that pursuant to the inhibitions of section 347 of the Civil Practice Act he excluded testimony by the claimants respecting transactions of the decedent in this connection.

In evaluating the propriety of this action it will be helpful to recall the obligations which rest upon a husband in respect of the support of his wife.

" By reason of the marriage relation there is imposed on the husband the duty to support and maintain his wife in conformity with his condition and station in life " (*Garlock* v. *Garlock*, 279 N. Y. 337, 340; *Keller* v. *Phillips*, 39 id. 351, 354), " but he is not bound to support her away from his home, even though such home may be disagreeable to her." (*People ex rel. Comrs. of Charities* v. *Cullen*, 153 N. Y. 629, 635; *People* v. *Schenkel*, 258 id. 224, 226.) If, therefore, a husband decides to move to another locality, and there establish his house, it must be held in respect of a wife who refuses to accompany him that she " in a legal sense abandoned him." (*Manufacturers Trust Co.* v. *Gray*, 278 N. Y. 380, 384.) So long as such a condition continues, the husband's obligation to support her becomes dormant. (*Rochester General Hospital* v. *Ingstrum*, 164 Misc. 148, 151.) She cannot call upon him to perform his obligation in this regard (*Mirizio* v. *Mirizio*, 242 N. Y. 74, 82), and her implied agency to procure necessary support at his expense is non-existent. (*Constable* v. *Rosener*, 82 App. Div. 155, 158.) Finally, a stranger furnishing such necessaries may not hold him liable therefor. (*Rochester General Hospital* v. *Ingstrum*, 164 Misc. 148, 151.)

The law respecting non-liability of a husband for his wife's support is not, however, limited to situations in which she has abandoned him either by personal departure or refusal to accompany him to the domicile of his selection, but includes a separation by mutual consent where there is no implication from the demonstrated facts that the wife anticipated future support from the husband. (*Manufacturers Trust Co.* v. *Gray*, 278 N. Y. 380, 386, 387.)

It follows, therefore, that if any obligation for reimbursement by a father to sons for contributions to the support of their mother could ever arise, an indispensable link in the chain of demonstration would be a showing, where abandonment by the father is claimed, that such abandonment by him, using the term in its legal signification, actually occurred. Such testimony by either of the joint claimants is clearly inhibited by the provisions of section 347 of the Civil Practice Act. Each is obviously " a party or a person inter-

ested in the event " since he would stand to " gain or lose by the direct legal operation and effect of the " decree to be entered allowing or disallowing his claim. (*Matter of Christie*, 167 Misc. 484, 488 and authorities cited.) The testimony of each was inevitably tendered " in his own behalf or interest " since the claim presented was a joint one; it was offered against the executor, and if probative of anything of value in this connection, must have been of some transaction with the decedent, which has been held to " include every method by which one person can derive impressions or information from the conduct, condition, or language of another." (*Matter of Christie*, 167 Misc. 484, 491, 492, and authorities cited.)

The exclusion of the tendered testimony by the referee was accordingly unexceptionable.

The composite result of the demonstration of the record is, therefore, that the decedent moved from his former residence in Brooklyn and established his place of abode and opened a business in Mattituck. His residence there was obviously well known to his wife and to all of the members of the family. If he left under circumstances amounting to a repudiation of his marital obligations, his liability for her support might be deemed to continue. If she merely refused to accompany him to his new residence and field of activity, the fault was hers and neither she nor any one claimimg through her may assert any rights against him. Finally, if they separated by mutual consent, in order that he or his estate may be held liable, it is apparently the rule (*Manufacturers Trust Co.* v. *Gray*, 278 N. Y. 380, 386) that support from other sources must have been furnished " with reasonable expectation that her husband would repay it." (See, also, *Swanton* v. *Curley*, 273 N. Y. 325, 329; *Matter of Schniman*, 167 Misc. 809, 814.)

Which of these several possibilities represents the fact was not demonstrated, wherefore affirmative relief is not permissible. " Enforcement of rights and obligations of the parties depends upon the matters revealed at the trial, not upon matters left to conjecture because proof is impossible." (*Manufacturers Trust Co.* v. *Gray*, 278 N. Y. 380, 385.)

Whereas these considerations furnish a complete reason for the denial of the claim, it is also worthy of note that its presentation was obviously an afterthought due, no doubt, to disappointment of the claimants with the terms of the will. Both claimants testified that the contributions made to their mother were motivated by their love and affection for her and as their contribution to the maintenance of the household of which, for a considerable period at least, they were members. Although they were aware of the residence of their father, the record is devoid of any indication of any

claim made upon him, of any protest against his separate residence " or of any refusal by the husband to provide such support as might be within his means." (*Manufacturers Trust Co.* v. *Gray,* 278 N. Y. 380, 386.)

The conclusion is, therefore, inevitable that the mother and sons concluded that they would prefer to maintain their own separate establishment, convenient to the places of employment of the latter, rather than for the mother to join her husband at his residence in the comparatively inaccessible location. Since the sons " gratuitously and without any evidence of expected reimbursement supported the " mother, the decedent was under no obligation to offer " additional support when it was already provided and no one asked him for it." (*Swanton* v. *Curley,* 273 N. Y. 325, 329.)

The painstaking and eminently satisfactory report of the learned referee will be confirmed and the claim will be denied, with costs.

Enter decree on notice in conformity herewith.