310

MARIA K. BAZANT, Respondent-Appellant, v VLASTIMIL BAZANT, Appellant-Respondent.

Fourth Department, May 15, 1981

APPEARANCES OF COUNSEL

*Walsh & Levine (Alan H. Levine* of counsel), for appellant-respondent.

*Miller, Bouvier, O'Connor & Cegielski (Beth L. Hoffman of counsel), for respondent-appellant.*

OPINION OF THE COURT

CARDAMONE, J.

Plaintiff and defendant are doctors married to each other, whose career-oriented lives have led to this litigation in which each seeks custody of their sole issue, Karen, a seven-year-old daughter. Plaintiff, Maria Bazant, commenced a separation action, later amended to divorce, and custody action against defendant, her husband, Vlastimil Bazant in New York in August, 1978. One month later defendant, who had a teaching position in Canada, commenced a proceeding in Unified Family Court in Saskatoon, Saskatchewan, which also sought custody of the couple's daughter whom he had with him at that time. Following the 1980 trial of their matrimonial dispute in Erie County Supreme Court, the trial court found that since neither party had proved cruel or inhuman treatment against the other, neither was entitled to a divorce. No appeal has been taken with respect to this aspect of the case. The judgment of the trial court also awarded the parties joint custody of Karen, failed to grant defendant a separation from plaintiff on the ground of abandonment, and ordered defendant to reimburse $3,017.26 as counsel fees which plaintiff incurred in defending the custody proceeding in Canada. From this part of the judgment, the defendant has appealed. Plaintiff has cross-appealed claiming that she should have been awarded sole custody of their child.

Maria Bazant, a physician who emigrated from Czechoslovakia in 1969, practices dermatology in Buffalo. Defendant, Vlastimil Bazant, came to the United States from Czechoslovakia in 1965 and practiced dentistry and also held a teaching position as a clinical instructor at the State University of New York at Buffalo. These parties were married in 1972 and Karen was born in 1973. Shortly after their marriage the parties purchased a home in Buffalo. In the fall of 1978 when defendant concluded that he had no chance to become a full professor, he signed a two-year contract as an associate professor and chairman of the

pathology department at the School of Dentistry of the University of Saskatoon, Saskatchewan, Canada. Initially, plaintiff opposed this move. Later she agreed, but decided to remain in Buffalo for half a year when her husband went to Canada in May, 1979. When he returned in June she asked for a separation. In mid-August when he returned again, he was served with a summons seeking a separation and custody of Karen. Shortly afterwards, defendant took his daughter back to Canada and called his wife to tell her that he was keeping Karen with him. Plaintiff thereupon instituted a proceeding in Supreme Court, Erie County, and on September 25, 1979 was granted temporary custody. Meanwhile, defendant had commenced a proceeding in the Unified Family Court in Saskatoon, also seeking custody. On September 26, 1979 following a hearing in Canada at which both parties were represented by counsel, defendant was directed to return the child to New York. The determination was affirmed upon appeal to the Canadian Court of Appeals. Immediately thereafter defendant returned Karen to her mother.

The first issue that we consider is the appropriateness of joint custody. In his argument seeking sole custody, defendant alleges that the trial court erred in not ascertaining and considering Karen's wishes. Testimony at the trial established that Karen had expressed her preference on different occasions to both her parents and to family friends to remain with her father. In light of this uncontroverted testimony by both parties, it was not necessary for the court to interview the child. Interviews with a child are not mandatory (Matter of Lincoln v Lincoln, 24 NY2d 270, 273-274; Opferbeck v Opferbeck, 57 AD2d 1074, mot for lv to app den 42 NY2d 810), and here such an interview would have served no useful purpose (Falkides v Falkides, 40 AD2d 1074). The trial court acknowledged Karen's preference and considered it, but correctly refused to allow it to be controlling. The weight to be given a child's preference is within the discretion of the trial court (2 Foster and Freed, Law and the Family, § 29.12). Notwithstanding its finding that both parents were "eminently fitted in every way to bring up the child", the trial court was not required

to make the child's preference the governing factor; particularly where the child is of tender years. Here, since Karen was only seven years old at the time of trial, she was "not competent to weigh intelligently the factors necessary to make a wise choice on custody" *(Martin v Martin,* 74 AD2d 419, 427; *Matter of Nehra v Uhlar,* 43 NY2d 242, 249; *Matter of Ebert v Ebert,* 38 NY2d 700, 702; *Dintruff v McGreevy,* 34 NY2d 887, 888). Further, there was evidence upon which the trial court could have found that Karen had been influenced by her father. Various witnesses testified that defendant discussed custody with Karen or with other people in Karen's presence and defendant admitted this. On that basis the trial court properly disregarded Karen's preference (cf. *Obey v Degling,* 37 NY2d 768, 770-771).

Plaintiff contends on her cross appeal that the trial court should not have awarded joint custody but, rather, should have granted her sole custody in view of the geographic separation of the parties between Buffalo and Saskatoon and because of defendant's alleged "bitter feelings toward her". Both parents were deemed "eminently fitted" to raise Karen, and joint custody allows both parents to share legal responsibility, control and physical custody *(Braiman v Braiman,* 44 NY2d 584, 589; Foster and Freed, Joint Custody, A Viable Alternative, 15 Trial No. 5, pp 26, 28 [May, 1979]). In any event, except for shared legal responsibility, the award of joint custody was, in effect, a grant of sole custody to plaintiff with liberal visitation rights to defendant. Under the judgment plaintiff has physical custody of Karen during the 10-month school year. Defendant has physical custody of Karen during summer vacation. Christmas and Easter recesses are shared; alternate custody is granted with respect to other holidays.

A custody determination should not be disturbed where there exists a substantial basis in the record to support it *(Bistany v Bistany,* 66 AD2d 1026, 1026-1027; *Matter of Braitsch v Braitsch,* 52 AD2d 1073, 1074). Decisions which largely depend upon character assessments as does this one, point up the reason for the settled rule that "the findings of the nisi prius court must be accorded the greatest respect" *(Matter of Irene O.,* 38 NY2d 776, 777). While the

geographic separation of the parties is one of the factors to be considered in awarding joint custody, it has not been held controlling *(Braiman v Braiman, supra,* p 590; *Cmaylo v Cmaylo,* 76 AD2d 898). Nor should the geographic separation be held determinative in this case where physical custody of Karen is not apportioned between the parties on a mathematical scale and where modern communication and transportation reduce the effect of geographic barriers. Again, plaintiff presented no evidence to support her argument that the geographic distance between the parties or defendant's feelings about her have made joint custody unworkable. In fact, the record reveals that the parties have shown an increasing ability to co-operate on matters affecting Karen. Thus, the finding that joint custody is in Karen's best interest finds ample support in the record (Domestic Relations Law, §§ 70, 240; cf. *Braiman v Braiman, supra).*

■ Next we consider the failure of the trial court to rule on defendant's counterclaim for a separation based upon plaintiff's claimed abandonment. Defendant contends that the court erred in failing to grant him a separation on that ground since plaintiff refused to move to Canada despite an earlier indication on her part that she would join him. Subdivision 2 of section 200 of the Domestic Relations Law provides for separation on the ground of abandonment. The requisite elements for such action are: an unjustified, voluntary separation with the intention of not returning. Generally, the husband has the right to choose the marital domicile and the wife's refusal to move— absent good cause—constitutes abandonment. However, the wife may be justified in not joining her husband where the husband's choice is manifestly unsuitable for the wife's needs (11A Zett-Edmonds-Schwartz, NY Civ Prac, §§ 25.01[1], 25.05[2][c]; 1 Foster and Freed, Law and the Family [rev ed], §§ 14.23, 14.29; *Koblenz v Koblenz,* 59 AD2d 864). The trial court found "readily understandable" plaintiff's failure to move in view of her professional position in Buffalo. A move to Canada which would likely involve additional training and testing in order for her to qualify as a dermatologist is unsuitable to her needs. It seems plain that defendant made a unilateral choice to

relocate in order to take advantage of a professional opportunity, but was not required to relocate. For this career-oriented couple we cannot find the wife's refusal to move to be unjustified (see *Weiss v Weiss*, 52 NY2d 170). In brief, we find no abandonment by the wife on this record which would support defendant's counterclaim for separation.

The last issue to be considered is the direction to defendant to reimburse plaintiff in the amount of $3,017.26 for counsel fees incurred by plaintiff in defending her husband's custody action commenced in Canada. These fees consist of $646.06 for present counsel's disbursements and preparation of affidavits to be forwarded to Canada and $2,371.20 for Canadian attorneys' fees. No other counsel fees were awarded to either party in the New York proceeding in view of the trial court's finding that husband and wife had approximately equal incomes. Defendant contends that plaintiff is not entitled to counsel fees for two reasons: first, plaintiff's application for fees was not timely under subdivision (b) of section 237 of the Domestic Relations Law since the Canadian proceeding had terminated; and, second, plaintiff is able to pay her own counsel fees. Plaintiff argues that "justice requires" the award of counsel fees pursuant to subdivision (b) of section 237 of the Domestic Relations Law, because defendant commenced the Canadian custody action after plaintiff had commenced a custody action in New York. Since subdivision (b) of section 237 does not encompass the award of counsel fees for a foreign custody application or proceeding, we do not therefore need to reach or determine the merits of defendant's arguments regarding timeliness and his wife's ability to pay her own counsel fees.*

---

* The Appellate Divisions take differing views. The Third Department requires indigency before an award of counsel fees may be made *(Matter of Hoyt v Boyar,* 77 AD2d 685 [3d Dept, 1980]; *Matter of Noel v Derrick,* 71 AD2d 704 [3d Dept, 1979]). The First and Second Department view the spouse's ability to pay his or her own counsel fees not as a bar to the award, but simply a factor to be considered *(Stern v Stern,* 67 AD2d 253 [1st Dept; 1979], mot for stay den, cross mot to dismiss app den 47 NY2d 833 [1979]; *Kaplan v Kaplan,* 77 AD2d 891, 892 [2d Dept, 1980], app dsmd 51 NY2d 822 [1980]; *Palmer v Palmer,* 76 AD2d 905 [2d Dept, 1980]; cf. *Kolmin v Kolmin,* 65 AD2d 928, 929 [4th Dept, 1978]; *Alwardt v Alwardt,* 41 AD2d 592 [4th Dept, 1973]).

Subdivision (b) of section 237 of the Domestic Relations Law, in providing for the award of counsel fees in a custody action mandates, that such award "may only be made in the order or judgment by which the particular application or proceeding is finally determined". We have permitted an award of counsel fees subsequent to a final judgment where it is part of a continuing application and may be treated as an "appendage" to the original award, provided that it "represent[s] legal services and expenses incurred *after* rendition of the final judgment" *(Roscini v Roscini,* 45 AD2d 254, 256-257 [wife may obtain award of counsel fees for an appeal or to enforce the terms of a final judgment]). However, this is not such a case. The Canadian custody action was entirely separate from the New York custody action and may not be considered an appendage. We note in passing that Canadian section 16 of the Unified Family Court Act (Saskatchewan Rev Stats, Ch U-1.1 [1978 Supp]) provides for award of costs when the court lacks jurisdiction. The record before us does not make clear whether the Provincial Court's dismissal was for lack of jurisdiction. The question of plaintiff's entitlement to costs at the trial level, therefore, seems doubtful. Even so, however, plaintiff would have been entitled to counsel fees on the appeal which her husband took in the Canadian proceeding. The Court of Appeal Act (II Saskatchewan Rev Stats, ch C-42, § 18, subd 1, par [d]) provides for costs to solicitors and counsel according to a published schedule (see *Saskatchewan Gazette* [Jan. 27, 1961; July 8, 1977]). Plaintiff's failure to make such an application, although represented by Canadian counsel, leads us to conclude that her later application in the New York proceeding was an afterthought.

Finally, we observe that were plaintiff unable to afford to pay for her representation in the Canadian proceeding, she would be entitled to institute a plenary civil suit for her "necessary" attorneys' fees, for which her husband may be liable *(Friou v Gentes,* 11 AD2d 124; *Handelman v Peabody,* 285 App Div 689, 690, mot rearg den 286 App Div 808; Rothenberg, Matrimonial Allowances in New York [rev ed] § 44; 16 NY Jur [rev ed], Domestic Relations, § 641).

The judgment should be modified insofar as it directed defendant to reimburse plaintiff $3,017.26 as counsel fees which she incurred in Canada by deleting such direction, and otherwise the judgment should be affirmed.

DILLON, P. J., SIMONS, DENMAN and SCHNEPP, JJ., concur.

Judgment unanimously modified, and as modified, affirmed, without costs, in accordance with opinion by CARDAMONE, J.